UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------X

SHATEEK BURTON, A.K.A. SHATEEK LANIER,

                                    Plaintiff,

        -against-

CITY OF TROY, JOHN COONEY, Individually,
MARK MASON, Individually, MICHAEL PARROW,
Individually, ADAM MASON, Individually,
ROBERT HAYDEN, Individually, MARK MILLINGTON,
Individually, and JOHN and JANE DOE 1-10, Individually,
(the names John and Jane Doe being fictitious, as the true
names are presently unknown),

                                    Defendants.

---------------------------------------------------------------------------------X

**COMPLAINT**

Docket No.: **1:24-cv-1495 MAD/TWD**

Jury Trial Demanded

Plaintiff SHATEEK BURTON (A.K.A. Shateek Lanier) (hereinafter "Burton" or "plaintiff"), by his attorneys, Brett H. Klein, Esq., PLLC, complaining of the defendants, respectfully alleges as follows:

### Preliminary Statement

1. Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, as such rights are secured by said statutes and the Constitution of the United States. Plaintiff's claims accrued on December 8, 2021, when the Rensselaer County District Attorney's Office (hereinafter "RCDAO") moved to dismiss the charges that were maliciously brought against him arising from the defendants' misconduct, resulting in the charges being terminated in Mr. Burton's favor and otherwise deemed a legal nullity.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is properly laid in the Northern District of New York under 28 U.S.C. § 1391(b) in that this is the District in which the claims arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff SHATEEK BURTON is a thirty-five-year-old African American man who presently resides in the State of Georgia.

7. Defendant City of Troy was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant City of Troy is a municipal corporation existing by virtue of the laws of the State of New York. At all relevant times, defendant City of Troy maintained its own police force, the City of Troy Police Department (TPD), whose principal function was to enforce criminal and administrative laws and rules in and about the City of Troy.

9. At all relevant times herein, defendants JOHN COONEY, MARK MASON, MICHAEL PARROW, ADAM MASON, ROBERT HAYDEN, MARK MILLINGTON, and JOHN and JANE DOE 1 through 10 were duly sworn police captains, sergeants, detectives, and/or officers of the TPD and are being sued in their individual capacities.

**FACTS**

10.  This action arises from the malicious prosecution of plaintiff, which was initiated by the defendant TPD officers involved in investigating and prosecuting plaintiff, including without limitation defendants JOHN COONEY, MARK MASON, MICHAEL PARROW, ADAM MASON, ROBERT HAYDEN, and MARK MILLINGTON, who ignored and withheld exculpatory evidence known to them and otherwise caused plaintiff to be prosecuted without probable cause for a crime of which he was wholly innocent.

11.  The events giving rise to Burton's arrest occurred on May 29, 2012, at approximately 8:50 p.m., when two to three individuals drove up in a vehicle, exited with hoodies pulled up, and one of the individuals shot at an individual, Jarell Reid, in the vicinity of 396 10th Street, Troy, New York.

12.  The victim of the shooting, though only ten feet from his assailants, could not identify the shooter due to the fact it was dark out and there was a power outage in the area.

13.  Subsequently, on June 1, 2012, Mr. Burton was arrested by the TPD defendants based on unreliable and false information provided by two purported witnesses to the shooting, to wit: Krystal Charbonnaeu and B'Asia Willis, who were friends.

14.  Willis and Charbonnaeu's statements to TPD officers were coerced, inconsistent and otherwise incredible, including *inter alia* Willis' claim that she knew Burton was the shooter because she had seen his face clearly from the light of a streetlamp.

15.  It was undisputed, however, that there was a power outage at the time of the shooting and therefore no streetlamps were working.

16.  Krystal Charbonnaeu also admitted that at the time of the shooting she was under the influence of excessive amounts of, *inter alia*, Xanax and other illicit drugs. Krystal

Charbonnaeu was also facing burglary charges at the time she was serving as a witness for the Troy police.

17. In addition, other witnesses to the shooting including Patricia Roddy, Rachel Roddy, and Linda Murray informed the TPD defendant officers prior to Mr. Burton's arrest that Charbonnaeu was not outside at the time of the shooting, and therefore could not have witnessed it, and was heavily under the influence at the time of the shooting. Patricia and Rachel Roddy also informed TPD defendants that Mr. Burton was not present on the night of the shooting.

18. The TPD defendants ignored this contradictory information which called the information provided by Charbonnaeu and Willis directly into question, failed to conduct a further investigation, including into alibi witnesses proffered by plaintiff, and proceeded with the arrest and prosecution of plaintiff, despite the fact that they lacked probable cause to believe he was the shooter given all of the information known to them.

19. As a direct result of defendants' misconduct, plaintiff was prosecuted in Rensselaer County Court for months and at the conclusion of a jury trial held on January 10 through 14, 2013, before Rensselaer County Court Justice Andrew Ceresia, Burton was convicted of, *inter alia*, Attempted Murder in the 2nd Degree, P.L. 110.00/125.25, and lesser included offenses.

20. On April 4, 2013, Burton was sentenced by Justice Ceresia to a term of imprisonment of 20 years plus 5 years post-release supervision for his convictions of Attempted Murder in the 2nd Degree and for Criminal Use of a Firearm in the 1st Degree, and 10 years imprisonment and 5 years post-release supervision for his convictions of Attempted Assault in the 1st Degree and two counts of Criminal Possession of a Weapon in the 2nd Degree, all of which were to run concurrent. *See* Exhibit 2, Uniform Sentence and Commitment Form.

21. Thereafter, while incarcerated, Burton filed a direct appeal with the Appellate Division, Third Department, wherein the conviction was affirmed. *See People v. Shateek Lanier*, 130 A.D.3d 1310 (3d Dep't 2015).

22. Burton, appearing *pro se*, thereafter filed a CPL § 440.10 motion seeking to vacate the judgment of conviction and sentence entered against him in Rensselaer County Court.

23. By Decision and Order dated August 2, 2017, the Rensselaer County Court granted Burton a CPL § 440.10 hearing to address issues including plaintiff's actual innocence.

24. At the hearing, witnesses confirmed the extensive misconduct of the TPD defendants involved in the prosecution as well as Burton's innocence, including, without limitation, testifying to the following relevant facts:

   i. Patricia Roddy testified, *inter alia*, that on May 29, 2012, she was present on the porch of 396 10th Street when the shooting occurred. She saw three individuals and the flash of a gun, but it was dark out due to a power outage. Patricia Roddy further testified that Krystal Carbonneau, her cousin, was inside the house at the time of the shooting and that Krystal Carbonneau was high and staggering that night, and her words were slurred. Patricia Roddy further testified that a detective contacted her the day after the shooting, and she told him that Burton was not there that day.

   ii. Rachel Roddy, Patricia's sister, testified, *inter alia*, that she was also present on May 29, 2012, on the porch of 396 10th Street, when the shooting occurred. Rachel Roddy confirmed that her cousin Krystal Carbonneau was inside the house at the time of the shooting and was under the influence of drugs that night. Rachel also testified that it was too dark out to make out the shooters' face. Rachel Roddy further testified that she knows Burton because they grew up together in the

    neighborhood, and she had not seen him on the night of the shooting. Rachel Roddy also testified that she conveyed this information to the police.

  iii. Linda Murray, the mother of Patricia and Rachel, testified, *inter alia*, that she and her daughter Rachel were present outside on the porch the night of the shooting. Krystal Carbonneau, her niece, was inside the house at the time of the shooting with her Father Gary Carbonneau and Laura Murray, and that Carbonneau was "wasted" that night. Linda Murray also maintained that it was so dark outside that you could only see silhouettes, not faces, even from her vantage point outside the house. Linda Murray testified to knowing who Burton is, and that she did not see him on the night of the shooting. Linda Murray also testified that she told the police not to speak to Krystal Carbonneau as she was not outside at the time of the shooting, but they refused to listen to her.

  iv. Laura Murray testified, *inter alia*, that she is Gary Carbonneau's mother, and Krystal Carbonneau's grandmother. On the night of the shooting, she was inside the house with both Gary and Krystal, and neither of them were outside when the shots went off.

  v. Gary Carbonneau also confirmed that Krystal was inside at the time of the shooting.

  vi. Krystal Carbonneau, the main prosecution witness at the trial, testified, *inter alia*, that on May 29, 2012 she was high on about 20 Xanax pills as well as cocaine, that she informed the police of this, that she didn't remember what had happened that night or giving a statement to the police, and that she told the DA and police this, but they insisted on her testifying to the statement and that they had her study and memorize the statement, though she had no recollection of making it. Carbonneau

also supplied an affidavit swearing that she had been coerced into signing a statement indicating she was an eyewitness to the shooting.

vii. B'Asia Willis, the other prosecution witness at the trial, testified at the hearing that, *inter alia*, she also did not remember anything about the shooting on May 29, 2012, but recalled telling the 911 dispatcher that she "did not know" who the shooter was at the time. Willis also admitted that she was high on drugs on the night of the shooting.

viii. Karim Little testified, *inter alia*, to being the actual target of the shooting, confirming that the Reid, the victim of the shooting, was mistaken for him. Little further testified that he had no issues with Burton, leading to an inference that Burton would have had no reason to shoot at Little. Notably, Little was subsequently the victim of a second shooting attempt while Burton was already imprisoned.

ix. Finally, William Gibson, Burton's main alibi witness, testified, *inter alia*, that he was with Burton on May 29, 2012, for the entire evening and that they were nowhere near the location of the shooting.

25. On August 15, 2018, the Rensselaer County Court denied Burton's 440 motion. Plaintiff thereafter appealed to the Third Department.

26. On February 19, 2021, the Third Department vacated Burton's conviction on 440 grounds and remanded his case. *See People v. Lanier*, 191 A.D.3d 1094 (3d Dep't 2021).

27. On remand, on December 8, 2021, having had a full and fair opportunity to review not only the original proof that led to plaintiff's conviction in this case and the proof provided during the appellate the 440 process, RCDAO moved to dismiss the indictment and felony charges

filed under Indictment Number 12-1070, and as a result all the false charges against plaintiff were fully dismissed and sealed.

## AS AND FOR A FIRST CAUSE OF ACTION
(Malicious Prosecution against the Individually Named Defendants under 42 U.S.C. § 1983)

28. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "27" with the same force and effect as if fully set forth herein.

29. The individually named defendants initiated, commenced, and continued a malicious prosecution against plaintiff.

30. The individually named defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

31. The individually named defendants lacked probable cause to initiate criminal proceedings against plaintiff.

32. The individually named defendants acted with malice in initiating criminal proceedings against plaintiff.

33. The individually named defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

34. The individually named defendants lacked probable cause to continue criminal proceedings against plaintiff.

35. The individually named defendants acted with malice in continuing criminal proceedings against plaintiff.

36. The prosecution terminated in plaintiff's favor.

37. As a result of the foregoing, plaintiff Burton is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the

individually named defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(<u>Violation of Right to Fair Trial against the Individually Named Defendants under 42 U.S.C. § 1983</u>)

38. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "37" with the same force and effect as if fully set forth herein.

39. Defendants withheld exculpatory evidence and created false evidence against plaintiff and forwarded said false evidence and/or failed to forward exculpatory evidence to the Rensselaer County District Attorney's Office.

40. As a result of defendants' conduct, plaintiff suffered a violation of his constitutional rights to a fair trial, as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution and was derived of his liberty.

41. As a result of the foregoing, plaintiff Shateek Burton is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(<u>Failure to Intervene under 42 U.S.C. § 1983 against the Individually Named Defendants</u>)

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "41" with the same force and effect as if fully set forth herein.

43. Defendants had an affirmative duty to intervene on behalf of plaintiff's behalf, whose constitutional rights were being violated in their presence by other officers.

44. The defendants failed to intervene to prevent the unlawful conduct described herein.

45. As a result of the foregoing, plaintiff was maliciously prosecuted and subjected to deprivation of his right to a fair trial.

46. As a result of the foregoing, plaintiff Shateek Burton is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Municipal Liability under 42 U.S.C. § 1983 against Defendant City of Troy)

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48. The foregoing violations of plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to defendant City of Troy, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who were investigated, arrested, or prosecuted for alleged criminal activities.

49. Prior to plaintiff's arrest, policymaking officials of the City of Troy, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

   a. the determination of probable cause to make an arrest, and initiate and continue a prosecution, and the avoidance of arrests and prosecutions based upon falsely manufactured or unreliable or coerced and/or false "evidence;"

   b. the duty to intervene to report misconduct committed by other officers; and

   c. unlawful interrogation techniques.

10

50. The aforesaid deliberate or *defacto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the defendant City of Troy, including but not limited to, the TPD Chief of Police, who knew (or should have known) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases; that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision, and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

51. Under the principles of municipal liability for federal civil rights violations, TPD's Chief of Police (or his/her authorized delegate) had final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters and lawful interrogation techniques.

52. The TPD Chief of Police, personally and/or through his/her authorized delegates, at all relevant times had final authority, and constituted a policymaker for whom the TPD is liable, with respect to compliance by TPD employees with the above-mentioned constitutional requirements.

53. During all times material to this Complaint, the TPD Chief of Police owed a duty to the public at large and to plaintiff, which he knowingly and intentionally breached, or to which

he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

54. The aforesaid policies, procedures, regulations, practices, and/or customs of the TPD were collectively and individually a substantial factor in bringing about the aforesaid violations by defendants of plaintiff's rights under the Constitution and the laws of the United States.

55. The foregoing customs, policies, usages, practices, procedures, and rules of the TPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

56. The foregoing customs, policies, usages, practices, procedures, and rules of the TPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

57. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the TPD, plaintiff was deprived of his to be free from malicious prosecution and denial of his right to a fair trial and due process of law.

58. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

59. As a result of the foregoing, plaintiff Shateek Burton is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**WHEREFORE**, plaintiff Shateek Burton demands judgment and prays for the following relief, jointly and severally, against the defendants:

(B)     full and fair compensatory damages in an amount to be determined by a jury;

(C)     punitive damages against the individual defendants in an amount to be determined by a jury;

(D)     reasonable attorney's fees and the costs and disbursements of this action; and

(E)     such other and further relief as appears just and proper.

Dated:  New York, New York
        December 8, 2024

                                            BRETT H. KLEIN, ESQ., PLLC
                                            Attorneys for Plaintiff
                                            305 Broadway, Suite 600
                                            New York, New York 10007
                                            (212) 335-0132

                                    By:     *Brett Klein*
                                            BRETT H. KLEIN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X

SHATEEK BURTON, A.K.A. SHATEEK LANIER,

                                            Plaintiff,

    -against-

                                                                          Index No.:

CITY OF TROY, JOHN COONEY, Individually,
MARK MASON, Individually, MICHAEL PARROW,
Individually, ADAM MASON, Individually,
ROBERT HAYDEN, Individually, MARK MILLINGTON,
Individually, and JOHN and JANE DOE 1-10, Individually,
(the names John and Jane Doe being fictitious, as the true
names are presently unknown),

                                            Defendants.

------------------------------------------------------------------------------------X


**COMPLAINT**


**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132